IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEPHEN S. ZICK,

                Plaintiff,     OPINION AND ORDER

    v.

                                    12-cv-407-wmc

UNITED STATES OF AMERICA,
WAUSAU PAPER CORPORATION WELFARE
BENEFIT PLAN, and ACUITY – A MUTUAL
INSURANCE COMPANY,

                Defendants.

---

      This case asks whether winter weather conditions on a severe, downhill section of Hilltop Road in Wausau, Wisconsin, should, in fact, have kept a U.S. mail carrier from "the swift completion of [his] appointed rounds," or at least from doing so behind the wheel of a truck.  On December 9, 2009, plaintiff Stephen Zick was struck from behind by a slow-moving, but out-of-control, residential U.S. mail delivery truck while using his snow blower to clear the street near his mailbox.  Zick brings this action under the Federal Tort Claims Act, alleging that the U.S. mail carrier's negligent driving caused the accident.

      As the primary defendant in the case, the United States argues that unforeseeable icy road conditions and Zick's own negligence were the primary cause of the accident.[1]

---

[1] Wausau Paper Corporation Welfare Benefit Plan and Acuity, A Mutual Insurance Company, are also nominal defendants, but are being sued primarily so that plaintiff Stephen Zick can obtain a determination of their subrogated rights relative to any payment made by the United States.  As to the current motion, therefore, they are merely along for the ride.

So much so, that the United States takes the extraordinary position that it is entitled to summary judgment dismissing this negligence action against it as a matter of law. For the reasons discussed below, the court will deny this motion.

UNDISPUTED FACTS[2]

A. The Parties

Stephen Zick lives at 4501 Hilltop Road in Wausau, Wisconsin, a two-lane road with curbs and gutters but no sidewalks. Although flat or mostly flat as it runs along the top of a hill, as the road continues in a southerly direction, it quickly begins a "steep" descent, passing Zick's house near the bottom before flattening out again.

Jeffrey Jackson is a long-time mail carrier for the United States Postal Service. On December 9, 2009, Jackson started work at the local post office at approximately 7:30 a.m. After punching in, Jackson did a brake and tire safety check on his "long life" delivery vehicle. The vehicle had rear-wheel drive, brakes on all four wheels and studded rear tires. Jackson recalls that the studs may have been somewhat worn down at the time, but he made the determination that they were sufficient for driving. To add traction that day, Jackson also loaded 250 pounds of weight in the rear of the vehicle.

---

[2] For purposes of this motion, the court finds that the following facts are material and undisputed unless otherwise noted.

### B. Road Conditions on Jackson's Route

Several inches of snow fell in Wausau, Wisconsin, on December 8 and early December 9, 2009. Jackson was familiar with how his vehicle handled and very familiar with the route, as he had been driving it for 18 years. As Jackson began to deliver mail around 9:30 a.m., he noticed that some of the roads on his route were still snow-covered, slippery and icy, but was able to navigate down numerous streets, including streets with significant hills that were neither salted nor sanded, and to negotiate numerous controlled intersections without an accident. Even so, Jackson noticed that the snowy and icy conditions were making it more difficult to get his vehicle going from a standing stop. As a result of these conditions, Jackson was concerned about navigating all streets safely and used extra caution in driving his route that day.

Jackson's usual mail delivery route turned south onto Hilltop Road, then up a short incline to the top of the hill and down the long, steep decline past Stephen Zick's house, all while stopping at the individual mailboxes arranged in clumps along the west (right) side of the road. Jackson had driven down this same decline in all weather conditions, including rain, snow, sleet and ice. After a snowfall, he knew from past experience that Hilltop Road could be slippery, especially when ice formed under the snow. Before December 9, 2009, however, Jackson had never lost control of his postal vehicle on Hilltop Road due to snow or ice.

In his 18 years of delivering mail to Hilltop Road, Jackson had also never seen conditions as bad as they were that day. When he first passed the intersection with Hilltop Road, Jackson realized that it had not yet been plowed. Since Jackson had the

3

option of skipping streets on his route that he did not think were passable, he decided to bypass the Hilltop Road portion of his route with the intent to return later.

### C. The Accident

At around 10:00 or 11:00 a.m., while looking out the front windows of his house, Stephen Zick saw a front end loader attempt to plow Hilltop Road. Zick watched it lose control, slide down the hill, and knock over some small trees and a group of mailboxes, including his own. Eventually the loader successfully plowed a strip down the middle of the road and left. Zick then went outside to clear his driveway and the area around the mailboxes with his snow blower so that mail could be delivered. One of his neighbors was also outside using a snow blower to plow his driveway.

Other than the loader, Zick had seen no traffic on Hilltop Road on the morning of December 9, 2009. Between 12:00 and 1:00 p.m., however, Jackson returned to the top of Hilltop Road after delivering mail to other parts of his route and saw that it had been plowed down the center, though the rest of the road was snow-covered. Jackson saw no ice on the road, but after turning onto it, observed that the plowed area had not been salted or sanded. He also knew that even if plowed, the road could be slippery if it had not been salted or sanded.

Jackson proceeded south on Hilltop Road, coming to a complete stop at the first set of mailboxes at the flat top of the hill. He then drove slowly down the hill. Jackson's speed just before he started down the hill was no more than five to six miles per hour. At some point, Jackson saw two people using snow blowers at the bottom of the decline,

4

on the right-hand side of the road. Jackson then took his foot off the gas and stepped lightly on the brake, which slowed his speed to approximately three miles per hour.

Unfortunately, as the vehicle began to slide on the ice, Jackson lost control of his vehicle approximately 1/3 of the way down the hill. As he tried to stop, Jackson pressed the brake repeatedly and with increasing force as the vehicle skidded to the right. He turned the steering wheel left, but Hilltop Road is crowned in the middle, so instead of moving the vehicle over the crown, this maneuver simply caused the back of the vehicle to swing. After momentarily letting up on the brakes with the vehicle sliding and the back swinging out to his left, Jackson again tried to apply pressure to the brakes, but the vehicle kept moving to the right side of the road. At that point, Jackson did not try to slow the vehicle by turning it right into a snowbank, having determined that he did not have enough room to do so and that it would instead send him directly into the path of the rapidly-approaching Stephen Zick.

While all this was happening, Zick was plowing the area around his mailbox with earphones on to protect himself from the noise created by his neighbor's and his snow blowers. As Jackson's mail truck careened toward him, Zick was wholly unaware and clearing snow next to the curb by pushing the snow blower southwest with his back to the hill. Jackson testified that he honked his horn as he approached Zick, but between his headphones and the noise of his snow blower, Zick apparently heard nothing.[3]

---

[3] Having used his snow blower many times, Zick was aware of the dangers in operating it near curbs, sidewalks and streets. In particular, he knew he needed to be aware of traffic and pedestrians to avoid injuries to himself and others. He also knew of the added risks associated with operating his blower in the street with his back to traffic, especially when the roads were icy or slippery and cars may be unable to maintain control.

The right corner of Jackson's vehicle struck Zick behind his knees and on his back, sending him flying over his snow blower and into the snowbank. Jackson estimates that the vehicle was traveling at 3 miles per hour upon impact. Zick's neighbor, John Juedes, saw the accident from inside his home and estimated that Jackson was traveling at "no more than ten miles an hour." He also heard no sounds besides the snow blower.

OPINION

Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

The claims against the United States arise under Wisconsin's common law of negligence. To maintain a cause of action for negligence, a plaintiff must show: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976). Every individual owes a duty of reasonable care to every other individual. *See Alvardo v. Sersch*, 2003 WI 55, ¶ 13, 262 Wis.2d 74, 662 N.W.2d 350.

Zick maintains that Jeffrey Jackson breached this duty by (1) driving at a speed too fast for conditions, (2) failing to keep a proper lookout, and (3) failing to maintain proper management and control of his vehicle. While the undisputed facts suggest that

Jackson was driving cautiously, the court concludes that there remain genuine factual disputes as to whether Jackson acted negligently *and* whether Zick's own contributory negligence was the primary cause of the accident.

I.  Driving too fast for conditions

Plaintiff's first basis for claiming negligence is that Jeffrey Jackson was driving too fast for the snowy and icy conditions on Hilltop Road that day. Jackson testified that he was cautiously proceeding down the hill at between three and six miles per hour, pointing out that it was almost impossible to drive any slower. See *McGee v. Kuchenbaker*, 32 Wis. 2d 668, 671-72, 146 N.W.2d 387 (1966) ("Certainly a driver traveling five or ten miles an hour could hardly be expected to reduce his speed."). Zick presents very little in terms of meaningful evidence to contradict Jackson's testimony about his speed. Zick's neighbor, John Juedes, testified that the postal vehicle was traveling about 10 miles per hour when it struck Zick, but this appears to have been after the vehicle already slid down most of the steep hill.

Whether this evidence means Jackson was traveling faster then he claims before losing control of his vehicle on the hill, Juedes' testimony has limited value in gauging the *initial* speed of the vehicle. Plaintiff Zick argues that Jackson's inability to use his brakes to keep the postal truck from sliding all the way down the hill is evidence he was travelling at an initial speed faster than three-to-six miles per hour, but this ignores another, (seemingly) equally plausible explanation: gravity caused acceleration of the

7

vehicle's speed until Jackson lost all control.[4]  Given this limited evidence, it would appear the trier of fact will be left to speculate that Jackson was traveling at more than three-to-six miles per hour.  Even so, the court declines to enter judgment as a matter of law since the plaintiff will be permitted to proceed to trial on its other bases for claiming defendants were negligent, as explained below.

**II. Failure to keep a proper lookout**

Plaintiff's second basis for claiming negligence is that Jeffrey Jackson failed to appreciate that treacherous road conditions made travel down the hill unsafe at *any* speed.  The evidence would appear to the contrary.  Jackson's uncontradicted testimony was that he was well aware the conditions on the roads that morning were generally bad, that Hilltop Road had been plowed only down the middle, and that there was no salt or sand on the plowed portion of the road.  Although he testified to seeing no ice, Jackson was also aware that Hilltop Road could be slippery and icy, which is why he chose to delay his route down that hill.

Jackson could hardly have appeared more observant that morning.  There is no dispute he was aware of conditions, added weight to the back of his truck for traction and delayed traveling down Hilltop Road until it was plowed.  The only reasonable dispute on these facts would be to entertain the possibility that a prudent driver would have exited his or her vehicle and walked down a steep and potentially slippery hill to check

---

[4] Zick offers no expert testimony as to the vehicle's likely or safe travelling speed under the snowy and icy conditions that morning, taking into account road friction, the grade of the hill, the weight of the vehicle, etc.

for ice before proceeding or not proceeding by vehicle at all.  The court is reluctant to find that an ordinary and prudent driver in Wisconsin or elsewhere must leave his or her vehicle to check conditions before proceeding, because this would have its own attendant risks, but will reserve judgment on this question, since it seems open to reasonable debate whether Jackson should have decided not to proceed down Hilltop Road at all given the conditions.  That decision is discussed in the following section.

**III.  Failure to use ordinary care in management of the postal vehicle**

Plaintiff's third basis for claiming negligence is that Jeffrey Jackson failed to use ordinary care in managing his postal vehicle by (1) steering it down a steep section of road that he knew to be snowy, slippery, unsalted and unsanded, despite the fact that he "had [n]ever seen the [road] condition as bad as it was on that day," (Jackson Depo., dkt. #28, 46:16-18), and (2) failing to stop the vehicle before it struck Zick.  Here, a reasonable trier of fact *might* reasonably find that Jackson was negligent in his decisionmaking.

   A.  Decision to proceed down the steep decline on Hilltop Road

The mere fact that Jackson struck Zick does *not* mean that he was negligent.  *See Millonig v. Bakken*, 112 Wis. 2d 445, 452, 334 N.W.2d 80 (1983) (Wisconsin law does not impose an absolute duty to avoid an accident).  Generally speaking, it is not considered unreasonable in Wisconsin to drive a vehicle up and down hills at moderate

9

speed during the wintertime, despite the fact that driving conditions may be snowy and icy.  As the Wisconsin Supreme Court has observed:

> It is a well-known physical fact that cars may skid on greasy or slippery roads without fault either on account of the manner of handling the car or on account of its being there. No negligence as a matter of law can be charged to the fact that defendant ran his car on Prospect Avenue that day on a snowy and slippery roadway . . . [I]t is a matter of common knowledge that cars run all winter and in practically all kinds of weather upon city streets.

*Linden v. Miller*, 172 Wis. 20, 21, 177 N.W. 909 (1920) (emphasis added).

On the other hand, conditions become so bad at some point that it may be irresponsible for even an experienced winter driver to venture onto steep road grades, particularly in a small, lightweight vehicle with rear traction known not to operate well in such conditions.  Contrary to defendants' suggestion, a finding by the trier of fact that Jackson acted negligently in driving down Hilltop Road on the morning of December 9, 2009, would not open the door for a rule that winter driving is *per se* unreasonable, but rather that heading down Hilltop Road under the particular conditions of that day in that particular vehicle was not something a prudent driver would or should have done, at least where there were other viable options.  For example, Jackson conceded that he could have skipped that portion of his route until later in the day to allow melting, or could have skipped it entirely, without violating any Postal regulations or putting himself or others in danger.

Defendants also argue that Jackson's decision to proceed was reasonable because (1) he had been able to stop his vehicle successfully at various points in his route on unsanded and unsalted streets, (2) the road had been plowed and (3) he had no reason to

believe conditions going down Hilltop Road were any different. Defendants do not say, however, that the successfully-negotiated portions of his route were as steep as Hilltop Road. Nor is it clear that his earlier success in controlling the vehicle renders his decision on Hilltop Road automatically reasonable. In addition, Jackson has conceded that on the same morning, he had trouble getting his vehicle going from a stop due to snow and ice.

Although the critical facts of this case are largely undisputed, the question of whether Jackson was negligent remains a debatable one by reasonable minds. As the Wisconsin Supreme Court has observed, "[t]he concept of negligence is peculiarly elusive, and . . . [o]rdinarily, this is not a decision [for] the court [at summary judgment]." *Alvarado v. Sersch*, 2003 WI 55, ¶ 29, 262 Wis. 2d 74, 88, 662 N.W.2d 350, 356-57. *See also State Bank v. Elsen*, 128 Wis. 2d 508, 517, 383 N.W.2d 916 (Ct. App. 1986) ("Summary judgment seldom can adequately portray th[e] totality [of the circumstances] and therefore is usually inappropriate to resolve negligence cases.").

### B. Decision not to steer the postal vehicle into the right-side snowbank

Plaintiff also takes issue with Jackson's decisionmaking during the few seconds *after* he realized that the brakes on the postal vehicle would not keep it from sliding down the hill. While there would appear little basis to argue Jackson did an unreasonable job attempting to apply the brake and to steer away from Zick to the left, it is a closer question whether he should have then steered the vehicle right and into the snow bank when those efforts failed.

Jackson's first line of defense with respect to his handling of the sliding vehicle relies upon that so-called "Emergency Doctrine" that "a person faced with an emergency, which his conduct did not create or help to create, is not guilty of negligence in the methods he chose, or failed to choose, to avoid the threatened disaster if he is compelled to act instantly without time for reflection."  *Totsky v. Riteway Bus Serv., Inc.*, 2000 WI 29, ¶ 233 Wis. 2d 371, 387, 607 N.W.2d 637, 644 (2000) (quoting *Seif v. Turowski*, 49 Wis. 2d 15, 23, 181 N.W.2d 388 (1970)).  At least for summary judgment purposes, this defense can be discarded, since a critical element of the test -- whether Jackson's conduct "created the emergency" -- is a question that must be sent to the trier of fact.

Defendants also assert that Jackson did not have sufficient time to deliberate on his course of conduct and, to the extent he did make a conscious choice not to turn the vehicle right into the snow bank, his decision was reasonably motivated by a belief that doing so would actually place him on a more direct path to strike Zick.  Again, the court must leave this question for trial, as it is highly context dependent.  As mentioned earlier, fact-bound considerations regarding reasonable driving conduct are for the most part best decided by the trier of fact after hearing and assessing live testimony.  For this reason, the court is unable to say with confidence that a reasonable trier of fact *must* find Jackson acted prudently under the circumstances.

### IV. Comparative negligence

Under Wisconsin's doctrine of "modified comparative negligence," if the plaintiff in a negligence action was himself negligent and more responsible for the injury than the

defendant, there can be *no* recovery. *See* Wis. Stat. § 895.045(1). Relying on this principle, defendants assert that the primary reason for the accident was Zick's decision to run his snow blower, along with his neighbor's equally loud blower, while standing in the road next to the curb with earphones on *and* his back to traffic.

Defendants' bid for summary judgment on the basis of comparative negligence also fails. Occasionally, a case may be dismissed on comparative negligence grounds at the summary judgment stage. See, *e.g.*, *Westland v. Werner Co.*, 971 F. Supp. 1277, 1281 (W.D. Wis. 2006) (citing *Huss v. Yale Materials Handling Corp.*, 196 Wis.2d 515, 535, 538 N.W.2d 630 (Ct. App. 1995)). However, "[g]enerally, the apportionment of negligence is a question for the jury." *Kloes v. Eau Claire Cavalier Baseball Ass'n, Inc.*, 170 Wis. 2d 77, 88, 487 N.W.2d 77, 81 (Wis. App. 1992). Indeed, "the instances in which a court can . . . rule [on comparative negligence at summary judgment] will be extremely rare," *Davis v. Skille*, 12 Wis.2d 482, 489, 107 N.W.2d 458, 462 (1961).

Given that this is a trial to the court, it is obviously tempting to decide this case on the written submissions, but the court would prefer to do so on a more complete record, including viewing the direct and cross examinations of key witnesses. The court does not doubt that Zick was at least somewhat negligent under the circumstances, but it is not as yet prepared to find as a matter of law that Zick was *more negligent* than Jackson. Accordingly, defendant's motion for summary judgment must be denied.

ORDER

IT IS ORDERED that defendant United States of America's motion for summary judgment (dkt. #29) is DENIED.

Entered this 27th day of August, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge